UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

**FRONTLINE PLACEMENT TECHNOLOGIES, INC.,**
a Pennsylvania corporation,

    Plaintiff,

v.

**PMP WILLSUB, LLC,** a Michigan Limited liability company; **PMP EDUCATION PARTNERS, INC.**, a Michigan corporation; **PROFESSIONAL MEDICAL PLACEMENT, INC., d/b/a PMP CORPORATION**, a Michigan corporation; **and MILLENIUM DATA SERVICES, INC., d/b/a WILLSUB.COM** a Michigan corporation,
    Defendants.

Case No. 2:07-cv-14872

HON. PAUL D. BORMAN

Magistrate Judge Virginia M. Morgan

---

**WEST EDUCATIONAL LEASING, INC.,**
**d/b/a PCMI WEST**
a Michigan Corporation,

    Plaintiff/Counter-Defendant,

v.

**FRONTLINE PLACEMENT TECHNOLOGIES, INC.**
a Pennsylvania Corporation,
    Defendant/Counter-Plaintiff.

Case No. 2:10-cv-10804

HON. PAUL D. BORMAN

Magistrate Judge Virginia M. Morgan

---

**PCMI'S MOTION TO STAY AND MEMORANDUM IN SUPPORT**

1

Defendant West Educational Leasing, Inc., d/b/a PCMI West ("PCMI") moves this Court to stay these proceedings pending the conclusion of a request for *ex parte* reexamination of U.S. Patent No. 7,430,519 ("the '519 patent") filed with the United States Patent and Trademark Office ("USPTO") on April 21, 2011.

## I.    STATEMENT OF FACTS

PCMI is in the business of providing services, technologies and resources relating to contract employment.  Defendant Frontline is the assignee of United States Patents Nos. 6,334,133 ("the '133 patent"), 6,675,151 ("the '151 patent") and the '519 patent and considers PCMI its competitor.

On or about July 29, 2009, PCMI purchased the assets of PMP Education Partners, Inc. and PMP Willsub, LLC, including certain technology ("WillSub System").  On September 29, 2009, PCMI received a cease and desist letter (*see* Docket No. ("Dkt. No.") 6, Ex. A) from Frontline's counsel relating to the WillSub System.  PCMI denies all putative claims made by Frontline in the cease and desist letter.

As such, on June 28, 2010, PCMI filed a complaint for declaratory judgment of (i) non-infringement of the '519 patent, the '133 patent, and the '151 patent; and (ii) invalidity of the '151 and '519 patents.  Dkt. No. 6.  The action was assigned case number 10-10804.  On August 27, 2010, Frontline filed its Answer and counterclaim of infringement of the '151 and '519 patents.  Dkt. No. 8.  Thereafter, on October 6, 2010, the matter was (i) consolidated with case number 07-14872 in which Frontline alleged infringement of the '519 patent by Defendants PMP Education Partners, Professional Medical Placement, Inc., and PP Willisub, LLC; and (ii) stayed pending the issuance of a *Markman* Order in the Frontline/CRS Action *Frontline Placement Technologies, Inc. v. CRS, Inc.*, Case No. 2:07-cv-02457 by the United States District Court for

the Eastern District of Pennsylvania. Dkt. No. 26. On February 11, 2011, Frontline filed a Notice with this Court that the *Markman* Order had been issued in the Frontline/CRS Action. Dkt. No. 36. The Court then entered a Notice to Appear for a *Markman* Hearing. Dkt. No. 37. To date, no discovery has been conducted in the PCMI matter, nor has any dispositive motion or claim construction brief been filed.

On April 21, 2011, PCMI filed, pursuant to 35 U.S.C. § 302 *et seq.* and 37 C.F.R. § 1.510, an *ex parte* reexamination request with the USPTO for the '519 patent, which is attached hereto as <u>Exhibit 1</u>. The Reexamination Request demonstrates that several prior art references render claims 1, 9-15, 19, 23-24, 30-32, 36, 40, and 60 of the '519 patent obvious pursuant to 35 U.S.C. 103(a), thereby creating substantial new questions of patentability that should be addressed by the USPTO. *Id.* Two of the three prior art references (Mitsuoka and SubFinder) were cited during prosecution of the '519 patent. However, during the pendency and ***<u>after</u>*** issuance of the '519 patent, claims from the parent '151 patent, which is also at issue in this litigation, were subject to *ex parte* reexamination. During the '151 patent reexamination, ***<u>all reexamined claims</u>*** were substantially amended to overcome multiple substantial new questions of patentability in light of Mitsuoka alone or the SubFinder in view of Mitsuoka. For example, the "securing" step in the '151 patent claims 3 and 6, i.e., "securing via the Internet communication link the substitute worker who selected the posted position to fill in for the absent worker," which appears in substantially the same form in claims from the '519 patent, was amended to require the halting or locking of parallel processing for fulfillment of the same job upon a contractor sending an acceptance of that job.

Notably, during prosecution of the '519 patent, the PTO, in the Notice of Allowability, linked the patentability of the '519 patent to that of the '151 patent by concluding that the claims

of the '519 patent reflect the allowable subject matter indicated in the '151 patent. However, in their current form, the '519 patent claims contain the rejected claim language from the pre-reexamination '151 patent claims. Thus, given the inextricable link between the allowable subject matter of the '151 patent with that of the '519 patent PCMI believes that, in their current form, the claims of the '519 patent, like the pre-reexamination '151 patent claims, are unpatentable. The third reference cited is new art, not previously considered by the Patent, whether during prosecution of the '151 or '519 Patents. In light of the Reexamination Request and in the interest of efficient use of the resources of the Court and parties, on March 30, 2011, PCMI's litigation counsel contacted Frontline's counsel and requested that Frontline stipulate to a stay of this lawsuit pending the USPTO's decision on the Reexamination Request. *See* Ex. B. However, on April 12, 2011, Frontline rejected that request. *See* Ex. C. Accordingly, PCMI seeks an order from this Court staying the consolidated action until the conclusion of the reexamination process before the USPTO.

## II.     LAW AND ARGUMENT

### A.     Legal Standard

The purpose of the reexamination statutes passed by Congress is to allow the USPTO to "review the efficacy of a patent, subsequent to its issuance, on the basis of new information about preexisting technology." *In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008). Reexamination serves the important function of "increas[ing] the reliability of the USPTO's action in using a patent by reexamination of patents though 'doubtful.'" *In re Etter*, 756 F.2d 852, 856 (Fed. Cir. 1985) (citing House Report No. 66-1307, 96th Cong., 2d Sess. (1980)). "The intent underlying reexamination is to 'start over' in the USPTO with respect to the limited examination areas involved, and to reexamine the claims . . . Reexamination is thus neutral, the

patentee and the public having an equal interest in the issuance and maintenance of valid patents." *Id.* at 857.

Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a USPTO reexamination. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-37 (Fed. Cir. 1988); *see also Lacks Indus., Inc. v. McKechnie Vehicle Components USA, Inc*., 2:96-cv-75692-VAR, slip op. at 6 (Dkt. No. 365) (E.D. Mich. May 13, 2010). "[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination," *Lacks Indus., supra* (citing *Donnelly Corp. v. Guardian Indus. Corp.*, No. 05-74444, 2007 U.S. Dist. LEXIS 78055, at *9 (E.D. Mich. Oct. 22, 2007), because reexamination "could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases." *Patlex Corp. v. Mossinghof*, 758 F.2d 594, 602 (Fed. Cir. 1985) (citing *Patent Reexamination: Hearings on S. 1679 Before the Comm. Of the Judiciary*, 96th Cong., 1st Sess. (1979)). Staying a case pending the resolution of a patent reexamination has a number of benefits "including streamlining the case, simplifying or eliminating remaining issues, promoting settlement, alleviating discovery problems, providing the Court with the USPTO's expert review of prior art, and reducing the length and expense of litigation." *JAB Distribs., LLC v. London Luxury, LLC*, No. 09C5831, 2010 WL 1882010, at *2 (N.D. Ill. May 11, 2010). Given their numerous benefits, courts routinely issue stays in infringement cases pending reexamination for the very reason that the infringement action can become moot or, at the very least, narrowed significantly. *Lacks Indus.*, *supra* (citing *Equipements de Transformation IMAC v. Anheuser-Busch Companies*, 559 F. Supp. 2d 809, 816 (E.D Mich. 2008)).

5

In determining whether to grant a stay, courts generally consider three factors: (1) whether a stay will simplify the issues in question and the trial of the case; (2) whether discovery is complete and whether a trial date has been set; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmovant. *Lacks Indus.*, *supra* (citing *Donnelly*, 2007 U.S. Dist. LEXIS 78055, at *9).

### B. A Stay Will Simplify the Issues and Trial of the Case.

The primary and very substantial benefit of staying the litigation pending final conclusion of a USPTO reexamination is the (i) potential complete elimination of the need for any further trial on a patent-in-suit (if the claims in the patent are cancelled by the USPTO), (ii) reduction in the number of patent claims to be tried, or (iii) reduction in the number of accused products that would allegedly be infringed by potentially narrowed claims. *Id.* at *12 (citing *Magna Donnelly Corp. v. Pilkington N. Am., Inc.*, 4:06-CV-126, 2007 WL 772891, at *2 (W.D. Mich. 2007) (stating that stays have numerous advantages, including alleviation of discovery problems, narrowing or elimination of issues, encouragement of settlement, benefit to the court of USPTO expertise, simplicity of introducing the USPTO record as evidence at trial, and reduction of costs for parties and the court)) (citations omitted). Effectively, a stay merely shifts to the USPTO an issue involved in the dispute before the district court and "eliminate[s] trial of that issue (when the claim is cancelled) or [] facilitate[s] trial of that issue by providing the district court with the expert view of the UPSTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

A stay is warranted in this case to simplify the issues before litigation. Before the Court are various counts related to the '519 patent: declaration of invalidity, declaration of non-

6

infringement, and infringement. Moreover, the '519 patent is the sole patent-in-suit for case no. 07-14872, and one of three patents-in-suit in case no. 10-10804

The prior art described in the Reexamination Request includes three references that are likely to limit the claims in the '519 patent. Specifically, the Reexamination Request cites two references which were used during the reexamination of the '151 patent, the parent to the '519 patent, in which ***all*** claims of the '151 patent were rejected and substantially amended to overcome multiple substantial new questions of patentability. These amendments included, *inter alia*, changes to the "securing" step in the '151 patent claims 3 and 6, i.e., "securing via the Internet link the substitute worker who selected the posted position to fill in for the absent worker," which appears in substantially the same form in claims 1, 9-15, 19, 23-24, 30-32, 36, 40, and 60 of the '519 patent.

Notably, during prosecution of the '519 patent, the PTO linked the patentability of the '519 patent to that of the '151 patent by concluding that the claims of the '519 patent reflects the allowable subject matter indicated in the '151 patent. *See* Ex. D at 6 ('519 Patent Notice of Allowability). The '151 patent is also at issue in this consolidated matter. Even though the PTO defined the scope of the '519 patent claims in terms of the allowable subject matter of the '151 patent, the '519 patent claims do not reflect the language of the amended claims of the '151 patent, also at issue here, for the same limitations. For example, in their current form, the claims of the '519 patent fail to limit the "securing" step. PCMI believes this will subject the Court to great difficulties during claim construction. When the Court is later faced with claim construction, the resulting reexamination proceedings for the '519 patent would greatly simplify claim construction issues for the Court by providing a "richer prosecution history upon which to base necessary claim construction determinations or reconsideration." *KlausTech, Inc. v.*

*Admob, Inc.*, 2-10-cv-05899, slip op. at 6 (Dkt. No. 77) (N.D. Cal. Feb. 22, 2011) (citation omitted); *Panavision Imaging, LLC v. Omnivision Techns., Inc.*, 2-09-cv-01577, slip op. at 6 (Dkt. No. 175) (C.D. Cal. Apr. 19, 2010) (same).

Moreover, in light of the rejection of the substantially similar claims of the '151 patent during reexamination coupled with the USPTO's finding of an inextricable link between the allowable subject matter of the '151 patent with that of the '519 patent, PCMI believes that its request for reexamination will be granted to require Frontline to, ***at a minimum***, substantially amend and narrow the claims of the'519 patent, resulting in findings of non-infringement by PCMI. *DJO, LLC v. Vitalwear, Inc*., 09cv2872-LAB, 2010 U.S. Dist. LEXIS 109832, at *5 (S.D. Cal. Oct. 15, 2010) (stating that the dispute the patentee raised over whether or not accused product would still infringe a claim narrowed during reexamination is "precisely the type of dispute[ ] the PTO is better equipped to resolve" than the Court). This belief is validated by the frequency with which *ex parte* reexamination requests are granted. Statistics published by the USPTO concerning reexaminations show that over 90 percent of all requests re granted and that, in over 75 percent of those cases, the claims are either changed or cancelled such that the USPTO here is likely to grant PCMI's Reexamination Request and cancel or require the change of claims 1, 9-15, 19, 23-24, 30-32, 36, 40, and 60 of the '519 patent. *E.g., Pacific Bioscience Labs, Inc. v. Pretika Corp.*, 2-10-cv-00231, 2011 U.S. Dist. LEXIS 3565, at *6 (W.D. Wash. Jan. 10, 2011) (granting stay in part because statistics showed that there was a greater than 75% chance that some claims would emerge changed or cancelled); *Progressive Cas. Ins. Co. v. Safeco Ins. Co. of Illinois*, 1:10 CV 1370, 2010 U.S. Dist. LEXIS 120222, at *13 (N.D. Ohio Nov. 12, 2010) (granting stay even though USPTO had not yet decided to grant the request since, given statistics, it was very likely that at least some claims would be changed upon

reexamination); *Honeywell Int'l Inc. v. Furuno Elec. Co. Ltd.*, 0-09-cv-03601, 2010 U.S. Dist. LEXIS 83707, at *4 (D. Minn. July 30, 2010) (same); *Netlist, Inc. v. Inphi Corp.*, 2-09-cv-06900, slip op. at 2 ((Dkt. No. 34) (C.D. Cal. May 18, 2010) (concluding that, in light of very high percentage of granted reexamination requests, there was a "reasonably good chance that the claims at issue w[ould] be altered or cancelled" and, at a minimum, would provide the court "with a more extensive prosecution history that w[ould] likely shed light on" the issues).

With cancellation or amendment likely, including amendment of the "securing" step, PCMI contends that the accused WillSub System would not infringe any valid claims emerging from the reexamination, thus greatly simplifying the issues in question and the trial of the case, including dismissal of one of the two actions in this consolidated matter. *Accord AT&T Intellectual Property I, L.P. et al. v. TiVo, Inc.*, 4-10-01059, 2011 U.S. Dist. LEXIS 22938, at *9 (N.D. Cal. Mar. 1, 2011) (stating that a stay pending reexamination of patents simplifies the issues and trial in the case where there were no issues unrelated to patent infringement for which the PTO's expertise resulting from the reexamination would not be helpful). If PCMI is required to defend against infringement counts related to the '519 patent, all parties will be involved in expensive and protracted litigation. Staying the case until conclusion of the reexamination proceedings at the USPTO may eliminate those costs to all parties or, at a minimum, substantially reduce those costs by narrowing the issues. *See, e.g., DJO, supra* (reasoning that, without a stay, litigation is likely to be duplicative, especially considering that any claims that are cancelled by the USPTO likely would not have to be litigated at all). This elimination or narrowing of issues has a concomitant beneficial effect on judicial economy. As such, the first factor militates in favor of a stay.

### C.     Discovery Has Not Yet Begun and No Trial Date Has Been Set.

The second factor, whether discovery is complete and whether a trial date has been set, also supports granting a stay. The parties have not (i) propounded or exchanged written discovery, (ii) noticed, let alone conducted, depositions of fact or expert witnesses, (iii) filed dispositive motions, or (iv) submitted any claim construction briefs. Thus, it is indisputable that the consolidated matter is at an early stage of litigation.

Courts, when considering a stay to allow for reexamination proceedings at the USPTO to progress to conclusion, typically grant the stay when the matter is at an early stage of litigation. *See, e.g., Progressive Cas. Ins., supra* (granting stay even though USPTO had not yet decided to grant the request since the case was at a very early stage and discovery had barely begun); *Honeywell, supra* (granting stay where motion was filed before any significant discovery or claim construction). Moreover, the fact that one case in this consolidated matter was filed in 2007 is of no import since, notwithstanding the commencement date of that case, the parties have not proceeded significantly through the litigation. *Orinda Intellectual Props. USA Holding Group, Inc. v. Sony Corp.*, 3-09-cv-04920, 2010 U.S. Dist. LEXIS 82729, at *5-6 (N.D. Cal. Aug. 11, 2011) (despite two year pendency of case, granting stay where little or no discovery had been exchanged, the initial case management conference had not occurred, and no claim construction or summary judgment proceedings had been scheduled).

Thus, in light of the preliminary stages of this matter, the Court here should grant the stay since, doing so would provide a "sound means" to facilitate resolution of this action. *ASCII Corp. v. STD Enm't USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

**D.     Frontline Will Not Be Unduly Prejudiced by a Stay.**

The third factor Courts weigh in determining if a stay is proper is whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmovant. Here, PCMI notes that Frontline, although prayed for in its Answer filed eight months ago, has not moved for injunctive relief against PCMI. *See, e.g., Pitney Bowes Inc. v. Zumbox, Inc.*, 2-09-cv-07373, slip op. at *13 (Dkt. No. 54) (C.D. Cal. May 20, 2010) (rejecting undue prejudice argument of plaintiff for inability to obtain injunctive relief where action was filed six months beforehand without any filing of a motion for preliminary injunction).

Furthermore, any damages and resulting interest Frontline alleges it has suffered as a result of any infringement of the '519 patent would continue to accrue during the course of reexamination, thereby not affecting Frontline's interest. *Card Activation Techns., Inc. v. Fashion Bug*, No. 4-10-cv-00117, slip op. at 6 (Dkt. No. 176) (W.D. Mo. Feb. 1, 2011) (concluding that, in the context of the third factor, failure to move for preliminary injunction, coupled with accrual of damages and interest during reexamination, militated in favor of a stay); *Etagz, Inc. v. Quicksilver, Inc.*, 8-10-cv-00300, slip op. at 2-3 (Dkt. No. 56) (C.D. Cal. Nov. 22, 2010) (same); *Brass Smith, LLC v. Advanced Design Mfg. LLC*, 2-10-cv-04945, 2010 U.S. Dist. LEXIS 141422, at *3 (C.D. Cal. Dec. 20, 2010) (stating that any prolonged litigation resulting in longer periods of alleged infringement by defendant is the kind of harm suffered by many patent plaintiffs and did not constitute undue prejudice favoring denial of a stay).

Moreover, any delay caused by the reexamination would be minimal. The USPTO is required by statute and regulation to determine within three months of the filing of the Reexamination Request if there is a substantial new question of patentability (*see* 35 U.S.C. § 303(a); 37 C.F.R. § 1.515(a)), and, if so, to conduct it with "special dispatch" (35 U.S.C. § 305),

with reexamination of the '519 patent done so with priority as it is involved in litigation (*Manual of Patent Examining Procedure* § 2261). As well, any delay caused is outweighed by the public policy of encouraging use of reexamination proceedings to reduce the cost and time spent in litigation. *See Pactool Int'l Ltd. V. Dewalt Indus. Tool Co.*, No. C06-5367BHS, 2008 WL 312677, at *1 (W.D. Wash. Feb. 1, 2008).

In addition, PCMI notes that its reexamination request is *ex parte* with no opportunity for appellate review. *See* 35 U.S.C. § 303(c). Thus, Frontline, as the patentee, would be in control of any deadlines associated with the reexamination such that ***any*** delay caused by reexamination would be due to Frontline, not PCMI. *See, e.g., Tablemax IP Holdings, Inc. v. Shuffle Master, Inc.*, 2-09-cv-01519, 2010 U.S. Dist. LEXIS 127287, at *3 (D. Nev. Nov. 16, 2010); *JAB Distributors, LLC v. London Luxury, LLC*, 1-09-cv-05831, 2010 U.S. Dist. LEXIS 46192, at *8 (N.D. Ill. Sep. 18, 2009) (noting that average pendency of reexamination is 25.4 months, with the median pendency of 19.8 months, and that this "amount of time…will not unduly prejudice" patentee). As such, with no undue delay to Frontline, the third factor favors the Court's granting of a stay.

### III. CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, PCMI respectfully requests that the Court stay the current litigation during the pendency of *ex parte* reexamination proceedings at the USPTO relating to PCMI's reexamination request.

*Respectfully submitted*,

Date: April 26, 2011                /s/ Mark R. Fox
                                    Mark R. Fox
                                    Toni L. Harris (P63111)
                                    FRASER TREBILCOCK DAVIS & DUNLAP, PC

                    Attorneys for Plaintiff in No. 2:10-cv-10804
                    124 West Allegan Street, Suite 1000
                    Lansing, Michigan 48933
                    (517) 482-5800 – Telephone
                    tharris@fraserlawfirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 26, 2011, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Dated: April 26, 2011                  /s/ Mark R. Fox
                                        Mark R. Fox (P39902)
                                        124 West Allegan Street
                                        Suite 1000
                                        Lansing, Michigan 48933
                                        (517) 482-5800 – Telephone
                                        (517) 482-0887 – Facsimile